## THE SUPREME COUNCIL OF THE ROYAL ARCANUM
## v.
## LOUISA LUND, ADMINISTRATRIX.

*Life Insurance—Benevolent Association—Misrepresentations or Concealment—Defective Instruction.*

In an action of *assumpsit* on a benefit certificate issued by a benevolent order to one of its members, it is *held:* That the evidence sustains the defense based on certain misrepresentations or concealments made by the deceased member; and that an instruction which ignored the affirmative defenses, which the evidence tended to establish, was erroneous.

[Opinion filed March 28, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

This was a suit in *assumpsit*, brought by Louisa M. Avery against the Superior Council of the Royal Arcanum, to recover a sum of money payable to her, by agreement, upon the death of her son, Charles A. Avery, who at the time of his death was a member of the Royal Arcanum. During the pendency of the suit Louisa M. Avery died and, her death being suggested upon the record, Louisa Lund, her administratrix, was substituted as plaintiff. A trial was afterward had before the court and a jury, resulting in a verdict and judgment in favor of the plaintiff for $3,000, and the defendant brings the record to this court by appeal.

The defendant is a corporation organized under the laws of the State of Massachusetts, and is the legislative and governing body of the Royal Arcanum, a secret benevolent order, one of the objects of which, as declared by its constitution, is "to establish a widows and orphans' benefit fund, from which, on the satisfactory evidence of the death of a member of the order who has complied with all its lawful requirements, a sum not exceeding $3,000 shall be paid to his family or those

dependent upon him, as he may direct." The Supreme Council is composed of its own officers and representatives from the Grand Councils of the different States, and the latter councils are composed of their respective officers and representatives of the subordinate councils, which are the local bodies through which members are received into the order by initiation. The fund out of which all death benefits are paid is held in the treasury of the Supreme Council, said fund being replenished, whenever necessary, by assessments upon the membership of the order.

The qualifications for membership prescribed are that the applicant should be between twenty-one and fifty-five years of age, of sound health and good moral character, a believer in the Supreme Being, and competent to gain a livelihood for himself and family. He is required to sign an application for admission to the order, of a prescribed form, and present himself to the subordinate medical examiner for examination, who is to make out a report of such examination upon a prescribed form or blank, such report constituting a part of the application, and the application and medical certificate are then forwarded to a supervising medical examiner, of whom one is appointed in each State. If he approves of the same, and certain other conditions are complied with, the applicant is eligible to an election as a member of the order.

On the 13th day of March, 1884, Charles A. Avery made an application for membership in Allen Council, No. 49, located at Milwaukee, Wisconsin. He was examined by Dr. Carlson, the subordinate medical examiner at Milwaukee, and his application and medical certificate being forwarded to and approved by Dr. Gordon, the supervising medical examiner, he was duly elected and admitted to membership, and afterward received the following certificate:

ROYAL ARCANUM BENEFIT CERTIFICATE.

"This certificate is issued to Charles A. Avery, a member of Allen Council, No. 49, Royal Arcanum, located at Milwaukee, Wisconsin, upon evidence received from said council that he is a contributor to the widows and orphans' benefit fund of this order; and upon condition that the statements

made by him in his application for membership in said council, and the statements certified by him to the medical examiner, both of which are filed in the supreme secretary's office, be made a part of this contract, and upon condition that the said member complies, in the future, with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the Supreme Council to govern said council and fund. These conditions being complied with, the Supreme Council of the Royal Arcanum hereby promises and binds itself to pay out of its widows and orphans' benefit fund, to Louisa M. Avery, mother, a sum not exceeding three thousand dollars, in accordance with and under the provisions of the law governing said fund, upon satisfactory evidence of the death of said member, and upon the surrender of said certificate ; provided that said member is in good standing in this order at the time of his death, and provided, also, that this certificate shall not have been surrendered by said member, and another certificate issued at his request, in accordance with the laws of this order.

"In witness whereof, the Supreme Council of the Royal Arcanum has hereunto affixed its seal and caused this certificate to be signed by its supreme regent, and attested and recorded by its supreme secretary, at Boston, Massachusetts, this 7th day of June A. D. 1884.

"JOHN HASKELL BUTLER,
"Supreme Regent.

"W. O. ROBSON,
"Supreme Secretary."

The evidence shows that Avery obtained a blank application for membership and filled the same out in his own hand-writing, and presented it to the medical examiner, but the rules of the order requiring the application to be in the hand-writing of the examiner, the latter copied it on another blank and the copy was then signed by Avery. The application thus signed by him contained, among other things, the following:

" I do declare, upon my honor as a man, that the said statements by me subscribed herein are each and every one of them true, to the best of my knowledge and belief. * * * I

am temperate in my habits, and have no injury or disease which will tend to shorten my life; am now in good health and am able to gain a livelihood. I do hereby consent and agree that any untrue or fraudulent statement made above, or to the medical examiner, or any concealment of facts by me in this application  *  *  *  shall forfeit the rights of my-self and my family, or dependents, to all benefits and privi-leges therein."

Among the interrogatories in said application, to be an-swered by the applicant, were the following:

"Have you ever had any severe illness or injury, or under-gone any surgical operation?"  To this the answer was "no."

"Have you ever been subject to or had any of the follow-ing diseases?  Answer yes or no to each."  A large number of diseases were particularly specified, and among them "fits and convulsions," and "loss of consciousness," and to these the answer was "no."

"Is there anything, to your knowledge or belief, in your physical condition, family or personal history, or habits, tend-ing to shorten your life, which is not distinctly set forth above?"  To this also the answer was "no."

The evidence shows that about ten years prior to the date of said application, said Avery had a very severe illness, his disease being what is known as cerebro-spinal meningitis, and that his disease manifested itself or was accompanied by spasms and convulsions, or what is ordinarily termed "fits" and loss of consciousness.  The medical witnesses who were examined testify that cerebro-spinal meningitis is an exceedingly danger-ous disease.

Again, on the 4th day of January, 1884, only a little more than two months prior to the date of his application, Avery was taken severely ill, his symptoms closely resembling those of his former illness.  He was then employed in the office of Peck's Sun, a newspaper published in Milwaukee, and the bus-iness manager of said newspaper, hearing some noise in the room where Avery was employed, went in and found him lying on the floor unconscious and apparently lifeless.  He was taken to his home insensible, and during his illness which

lasted about eight days, he was unconscious a considerable part of the time, and was suffering from convulsions or fits. The physician who was called to attend him testifies that he found him very ill, suffering from spasmodic contraction of the muscles of the back, "which would draw him way back—draw his head and heels together." The physician also testifies that, after Avery had recovered consciousness, he told him that he had had two or three similar attacks and that they were caused by a very severe attack of cerebro-spinal meningitis which he had had some years before, and that any undue excitement, overheating or sudden cold was likely to bring them on; that the treatment which the witness had given him was the only one which had ever had any effect upon him; that Avery had in his pocket-book, and took out and showed to the witness, a paper written by his family physician, who had told him to show it to any physician and ask him to follow the line of treatment there indicated, in case he had any of those attacks, saying that unless such treatment was followed, the chances were that he would die. Said witness gave it as his opinion that the illness which he was called to treat was the result of spinal meningitis; that there was evidently a lesion of the spinal cord at the base of the brain, and that any sudden exposure or undue exertion would be liable to produce that set of symptoms.

There is also evidence of an admission by Avery to his sister, prior to his sickness of January, 1884, that he was subject to such attacks; and also of an admission by him to another witness that at some time early in life he lifted a heavy weight and felt something give way in his back, and that his back had troubled him ever since.

On the 27th day of September, 1884, Avery died, the cause of his death, as the evidence tends to show, being "spasms of the muscles of respiration and glottis."

The plaintiff's evidence tends to show that Avery, at the time he made his application for membership, told the medical examiner, to whom he delivered the application, that he had the cerebro-spinal meningitis about ten or twelve years before, but that he had recovered from it and was then en-

tirely well. There is no evidence, however, that he made any disclosure as to his then recent illness, or as to any of the other attacks which he had subsequent to the illness of which he made mention. Nor is it shown that he made any mention of the injury received by him when young, or of the prescription which his family physician had given him, and which he was carrying around in his pocket, or of his physician's advice accompanying said prescription.

Mr. H. H. C. Miller, for appellant.

The plaintiff is bound by the statements made by Charles A. Avery in his written application. They can not be varied by parol testimony, unless it can be shown clearly and unequivocally that he was induced to make them by fraud. Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108; Hugginson v. Doll, 13 Mass. 96; Whitney v. Haven, 13 Mass. 171; Weston v. Eames, 1 Taunt. 115; Allerton v. Brown, 14 Mass. 152; Parks v. General Int. Ins. Co., 5 Pick. 34; Flinn v. Tobin, 1 Wood & Wall. 367; Franklin Ins. Co. v. Martin, 8 I. L. J. 144.

No particular form of words is necessary to constitute a warranty. Words of affirmation, affirming matter of fact, upon the faith of which the party contracts, are as competent to make a warranty as any strict technical terms. Bliss on Life Insurance, p. 46; Co-operative Assoc. v. Laflin, 53 Miss. 15; Ripley v. Ætna F. Ins. Co., 30 N. Y. 136.

A warranty must be strictly complied with, whether it is as to a material or a trivial fact. A misstatement in a warranty is, therefore, fatal to the contract, although arising from the most innocent mistake or from false information afforded by others, or from mere inadvertence, and as much so as if made with the most fraudulent intent. Bliss on Life Ins., Secs. 36–40; May on Ins., Secs. 181, 182; Jeffries v. Life Ins. Co., 22 Wall. 47; Co-op. Life Assoc. v. Laflin, 53 Miss. 1; Swick v. Home Life Ins. Co., 2 Dill. 160; Barteau v. Phœnix Mut. L. Ins. Co., 67 N. J. 595; Edington v. Ætna L. Ins. Co., 77 N. Y. 564; S. C., 100 N. Y. 536; Ætna L. Ins. Co. v. France, 91 N. Y. 510; New York L. Ins. Co. v. Fletcher, 117 U. S. 519; Dwight v. Germania L. Ins. Co., 4 Cent. Rep. 529.

Whether the stipulations in the contract of insurance before the court shall be held to be warranties or representations only, if it appears from the evidence that any of them are false as to matters material to the risk, the legal effect of their falsity is the same, and the plaintiff can not recover. Bliss on Life Ins., Secs. 35–40 and 52 (foot notes, 2d ed.); Carpenter v Prov. & Wash. Ins. Co., 41 U. S. 495; Daniels v. Hudson R. F. Ins. Co., 12 Cush. 417; Foote v. Ætna Life Ins. Co., 61 N. Y. 576; Carpenter v. Am. Ins. Co., 1 Story 62; Co-op. Life Assoc. v. Laflin, 53 Miss. 1; New Eng. F. & M. Ins. Co. v. Wetmore, 32 Ill. 221; Hartford L. & A. Ins. Co. v. Gray, 91 Ill. 159.

Mr. F. S. BAIRD, for appellee.

BAILEY, J. In this case the plaintiff seeks to recover upon a contract in the nature of a policy of insurance upon the life of Charles A. Avery, and the defendant sets up in defense and has introduced evidence tending to prove certain false representations in the application upon which said contract is based. The defendant also sets up a breach of warranty, the application being, by the express agreement of the parties, incorporated into and made a part of said contract. As we view the case it will not be necessary for us to determine whether the statements of the application should be treated as representations or warranties, since, if they are shown to be false, their effect upon the plaintiff's right to recover is the same in the one case as in the other. The court, at the instance of the plaintiff, gave to the jury the following instruction:

"The jury are instructed that if they believe from the evidence the plaintiff has made out her case, as alleged in her declaration, they must find for the plaintiff."

All the plaintiff needed to do to make out her case, as she has alleged it, was to prove the material averments of her declaration. The instruction, therefore, entirely ignored all affirmative defenses which the evidence on the other side tended to establish. The plaintiff may have made out her case as alleged in her declaration, and yet such case may have been

Supreme Council of the Royal Arcanum v. Lund.

met and overthrown, not by disproving the declaration, but by establishing facts *aliunde*, the effect of which was to defeat the plaintiff's right to recover. If the defense had consisted of a mere traverse of the averments of the declaration, the instruction might not have been misleading, but as applied to the case where the defendant sets up and relies upon an affirmative defense, in the nature of a confession and avoidance, it can not be sustained. There the plaintiff can succeed only where the evidence upon all the issues preponderates in her favor.

But we are of the opinion that, upon the evidence, the verdict should have been for the defendant. Avery, the insured, by his application for membership in the Royal Arcanum, represented and, as we think, warranted that he was then in good health; that he had never had any severe illness, and especially that he had never had fits, convulsions or loss of consciousness, and that there was nothing in his physical condition or personal history or habits tending to shorten his life. That these representations were untrue is too plain to admit of argument. The evidence is uncontradicted that about ten years before he had a very severe and dangerous illness, resulting, there is some reason to suppose, from an injury received in his youth. But this is not all. The evidence very strongly tends to show that, as the result of said illness, he was ever afterward laboring under a tendency to attacks of illness of a very serious and dangerous character, and, in fact, had frequent attacks of such illness, said illness usually, if not uniformly, taking the form of fits, convulsions and loss of consciousness, and that he was perfectly well aware of his diseased condition and his constant liability to such attacks. At the time he made his application he had but just recovered from a severe illness of the character above described, and it seems probable that his death, which took place about six months afterward, resulted from another and similar attack.

But it is urged that because Avery stated to the defendant's examining physician at the time his application was made out, that he had an attack of cerebro-spinal meningitis ten or twelve years before, the defendant can not now take advantage

of the statements in the application, either as constituting false representations or a warranty. It may be admitted that if Avery had fully disclosed to said physician at the time all the facts in relation to his health and physical condition, both past and present, the defendant would have been precluded from taking advantage of the untrue statements embodied in the written application. The evidence, however, clearly shows that he did not do so. All the disclosure made was in reference to his illness ten or twelve years before, but that was coupled with the statement that he had entirely recovered, and that he was then in as good health as he had ever had in his life. His subsequent predisposition to illness and his repeated attacks, and especially the one from which he had then just recovered, were carefully concealed. The facts thus misrepresented and concealed were those which, above all, it was important for the insurer to know. An illness suffered many years before, and from which the applicant had entirely recovered, was doubtless regarded as of very little consequence, but it was very material that the insurer should be informed that said illness had produced and left strong and irradicable tendencies to further attacks of illness which were liable at any time to prove fatal. The most important and material facts were thus concealed or misrepresented, and we see no legal impediment in the way of the defendant's setting up such misrepresentations or concealments as a defense.

We have not taken the pains to examine critically the special plea filed on behalf of defendant, as the defenses set up are all available under the general issue. Said defenses seem to us to be established by evidence which is substantially uncontradicted, and the verdict should, therefore, have been for the defendant.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*