GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF ILLINOIS,

v.

MINNIE E. CRESSEY.

*Life Insurance—Mutual Benefit Association—Non-Payment of Assessment—Suspension from Membership.*

·1.   Application for reinstatement in a mutual benefit association amounts to an acknowledgment that applicant was lawfully suspended.

2.   When at the time of such application assessments have not been paid up, and applicant offers to pay them, it will be assumed that he had notice that he was delinquent as to them.

3.   The contract of insurance is essentially one of good faith; a reinstatement obtained upon false and fraudulent representations, will not be binding on the insurer.

4.   The fact that, after the reinstatement of such member, his subordinate lodge allowed him sick benefits, or paid assessments for him, can not conclude the Grand Lodge from setting up the defense of fraud, in obtaining reinstatement.

[Opinion filed January 27, 1893.]

APPEAL from the Circuit Court of Cook County; the Hon. S. P. McCONNELL, Judge, presiding.

Mr. JOHN P. AHRENS, for appellant.

The payment of assessments must be proved to make out a *prima facie* case.    Suppiger v. Cov. M. Ben. Ass'n, 20 Ill. App. 595; Mut. Ben. L. Ins. Co. v. Robertson, 59 Ill. 123; Conn. Mut. L. Ins. Co. v. Rogers, 119 Ill. 474.

The overruling of the motion to instruct the jury to find for the appellant, it is respectfully submitted, was sufficient error to sustain the motion for a new trial.

There can be no doubt that Cressey's beneficiary certificate was legally suspended on the 28th day of April, 1888, Benev. Soc. v. Baldwin, 86 Ill. 479.

That being the case, plaintiff's next position on the trial below was that said beneficiary certificate was reinstated, or in any event that the defendant Grand Lodge is estopped from denying its reinstatement.

It must be borne in mind that Cressey himself did not pay his arrearages.    They were paid by Elmslie; neither did Cressey pay any subsequent assessments.    They were paid for him by Victor Lodge.    The certificate of health upon which the reinstatement was based, was absolutely required by the law above set forth, because more than thirty days had elapsed since the suspension.    Cressey, as a member of the order, was bound to take notice of, and by presumption of law knew the requirements of this law.    Niblack on Mut. Ben. Soc., Secs. 12 and 166, and authorities cited; Bacon on Ben. Soc., Sec. 81.

Hence, when Cressey, in his letter to Elmslie, requested him to pay up said Cressey's assessments and have him reinstated, he knew that it would be necessary for Elmslie to present a certificate of health before he could be reinstated; and for that reason undoubtedly, he wrote Elmslie that he, Cressey, was feeling first rate and never felt better in his life, notwithstanding he was in the last stages of consumption.

He therefore constituted Elmslie his agent to procure his reinstatement, and necessarily empowered him to do all that was necessary to that end, and was bound by the representation and agreement in the certificate of health to the same extent as if he had signed it himself.

Without a certificate of health, Cressey could not in any

event have been reinstated. "The membership of the deceased was subject to the operation and effect of the by-laws of the society, and as they were reasonable, it was the duty of the court to protect the corporation in enforcing them." Niblack on Mut. Ben. Soc., Sec. 325, and authorities cited.

It can not be held that Cressey was not bound by the certificate because he did not sign it, without also then holding that the certificate was absolutely void and of no effect, and that said Cressey, therefore, in effect, was reinstated without any certificate of health at all.

In other words, it must be held that the certificate of health was the certificate of said Cressey for all purposes, and that he was bound by the agreement therein contained, or else that it was no certificate of health at all; in either of which cases the reinstatement was void.

If it be held that Cressey was bound by the certificate to the same extent as if he had signed it himself, then the reinstatement was void, because Cressey then was *not* in sound bodily health, in which event he expressly agreed in the certificate the reinstatement should not be binding.

If, on the other hand, it be held that the certificate, because not signed by Cressey, was not binding upon him, then the reinstatement was void, because it was effected by fraud upon the Grand Lodge in presenting to it a fraudulent certificate purporting to be signed by said Cressey, which in fact, then, must be held to be a forgery.

It is no answer to say that because the forgery was not committed by Cressey it does not affect him. He and the appellee can not attempt to take advantage of the wrong which they do by insisting that the reinstatement was made without being parties to or affected by the fraud of which they seek to take advantage.

There can be no doubt it was absolutely false and untrue that Cressey was in sound bodily health on June 27, 1888, when he was reinstated on that certificate.

The evidence of this is not only the proof of death, but the deposition of said Dr. Day, taken in this case, also shows this beyond a doubt.

Hence, in every view of the case, the fact remains that this reinstatement was obtained upon a certificate of health which was absolutely false and untrue, and the same principle of law must necessarily apply to this case that is applicable to the case where a beneficiary certificate is procured in the first instance by false statements of health on the part of the applicant.

That such statements avoid the beneficiary certificate was decided by the Appellate Court of this district in a well-considered opinion by Justice Bailey in Supreme Council of the Royal Arcanum v. Lund, 25 Ill. App. 492. See also Jeffery v. Life Ins. Co., 22 Wall. 47; Ætna L. Ins. Co. v. France, 91 U. S. 510; Cont. L. Ins. Co. v. Rogers, 119 Ill. 474.

Mr. Frank J. Loesch, for appellee.

The giving of notice is a condition precedent and good standing is not lost by a failure to pay an assessment of which no notice was given, through the fault or misconduct of a supreme lodge or society, or its officers. Niblack on Ben. Societies, Sec. 284; Covenant Mut. Ben. v. Spies, 114 Ill. 463.

In Brograefe v. Knights of Honor, 22 Mo. App. 127, 147, the court say : " The laws of this order, as set out in the opinion of the court, make the fact of the mailing of this second notice, or warning, and its disregard by the member for the space of fifteen days, *ipso facto*, a suspension of the member, whether it was in fact transmitted to him by the servants of the postoffice or not, and, under the rule which works a forfeiture upon proof of the mere fact of mailing, without proof of the fact of delivery, it is a fair conclusion that evidence of the fact of mailing ought to be clear." Supreme Lodge v. Dalberg, 37 Ill. App. 145, S. C., Sup. Ct., 28 N. E. 785; Mutual Fund Life Soc. v. Hamlin, 139 U. S. 297.

When Elmslie, at Cressey's request, and on his promise of repayment, advanced the money necessary to secure Cressey's reinstatement, it had the same effect as if Cressey had remitted to Elmslie the necessary cash payments. Instead of

insisting on the money, Elmslie accepted Cressey's promise to repay it later on. But with this private arrangement of debtor and creditor the lodge could have no concern, nor could it inquire into the matter and refuse to accept payment because Elmslie was loaning the sum to Cressey. In paying the money, Elmslie acted as Cressey's agent, and after its payment Elmslie could not have withdrawn it. The payment having been made, and Cressey relying upon it as having secured his reinstatement, the appellant as well as Victor Lodge would thereafter be estopped in denying the reinstatement to the prejudice of Cressey or of appellee. "A condition once waived is forever gone." Continental Life Ins. Co. v. Rogers, 119 Ill. 474.

Counsel insists, however, that as Cressey paid no subsequent assessments, there is nothing for him to rely on and no estoppel can be urged against appellant.

This is certainly a misconception of the record. Cressey, relying on his reinstatement, some time in July or early in August applied to Victor Lodge for sick benefits, and they were granted. If his reinstatement was invalid, then he should have been informed of it when he applied for sick benefits, and the cause given him why his reinstatement was alleged to be invalid. If it was because Elmslie had loaned him the necessary money to secure his reinstatement, then he should have been so told, in order to enable him to repay Elmslie at once. If it was alleged to be invalid because he did not himself sign the certificate of health, then he should have been given the opportunity to sign it. If it was because the certificate of health was alleged to be untrue, then he should have had the chance to establish its truth. On the contrary, his restoration was not challenged, but his application for sick benefits was granted and payments continued till his death. Victor Lodge also paid to the appellant assessments against Cressey's certificate, made in July and August, 1888.

Why these sick benefits and assessments were paid by Victor Lodge is not shown in the record, but the presumption would be that it was under a legal liability to Cressey

to do so under its by-laws, because he was sick and entitled to benefit, and not because of "voluntary kindness" on the part of the lodge, as suggested by appellant's counsel. The legal liability becomes clear as the basis of these payments when we read Art. 12, Sec. 1, entitled "Benefits" which provides:

"Any member of the lodge entitled to benefits by the provisions of the by-laws of the lodge, who through sickness or other disability is unable to follow his usual business or some other occupation, shall be considered a beneficiary member, entitled to receive such weekly benefits as the by-laws prescribe; * * * nor can a brother while receiving benefits from the lodge become in arrears so as to debar him from them, the master workman being authorized to pay the financier from the amount drawn for his weekly benefits, a sum sufficient to prevent his becoming in arrears to the lodge to the amount of three months' dues."

Under this article, Victor Lodge could provide for sick benefits as it saw fit, and, in addition to retaining out of sick benefits three months' dues, it may have provided for retaining assessments; at any rate the subject was within its sole control and the payment of assessments for Cressey while he was receiving sick benefits, loses its suggested charitable character and takes on a legal liability, in the light of appellant's requirement that dues for three months should be taken out of the weekly benefit due to the sick member.

In view of this, it is more than likely that from the sick benefits were deducted assessments which, but for such charges, should have been sent entire to Cressey. And such deductions were made, and said payments of assessments to the appellant were all made, because of the fact that Cressey was a member in good standing until his death.

The failure to challenge his reinstatement while Cressey was alive, and the payment of sick benefits to him, were all-sufficient to preclude Cressey having a thought that he was not duly reinstated and entitled to all the benefits of his order. He died in that belief. There was injury enough in leading him in his lifetime to believe he was in good

standing to estop appellant from now insisting to the contrary.

"The principles of estoppel would not permit appellee to throw appellant off his guard, and thus obtain an inequitable advantage by agreeing to extend the time for appellant to perform the contract and then insist on it as it was written." Per Mr. Justice Walker, in Longfellow v. Moore, 102 Ill. 289.

Every word of that language (reversing the designation of the parties) is applicable to this case, as I have above attempted to show.

Resting appellee's case on the facts above discussed, which so clearly sustain the judgment, it is unnecessary to prolong this argument upon the facts.

I will refer briefly to the authorities cited by appellant which are claimed to militate against appellee's position and also ask the court to consider a few, which are cited below, to sustain the appellee's view of the law.

As disposing of appellant's contention that Elmslie's advancing the money as a loan to Cressey to secure his reinstatement was not a payment by Cressey, we cite Benevolent Society v. Baldwin, 86 Ill. 479.

In that case the local agent of the society attempted, as a matter of charity, to raise sufficient money among Baldwin's friends to secure his reinstatement by the time fixed by the secretary. He failed in this, but at a later date collected the money in the manner stated and remitted it, but it was refused and returned. Baldwin having thereafter died, it was, on behalf of his widow, claimed that the forfeiture had been waived by the society. The court held otherwise on the facts, and *arguendo* per Mr. Chief Justice Scholfield, page 485, said:

"It is plain that, in making the effort to collect this money from Baldwin's friends, the local agent, Barnett, was not acting on behalf of appellant, but on his individual account, endeavoring, as a matter of charity, to render a service to Baldwin. To say that the money thus raised and advanced was raised and advanced by Baldwin, is to disre-

gard the facts. It was raised and advanced by his friends, upon the condition that it could be made available to reinstate Baldwin; and the condition being impossible, it was returned to those who advanced it. Baldwin did nothing and assumed no legal liability in the matter."

In the case at bar Cressey assumed a legal liability by requesting the payment to be made on his behalf by Elmslie and by expressly promising to repay him.

That a waiver can be made by a company, an agent, a dependent society or a subordinate lodge, in spite of the most positive terms in the policy or rules declaring a forfeiture but for such waiver, has been so often decided that it has become elementary.

An unconditional assessment after a default for non-payment of the previous assessment has been many times held to. be an absolute waiver of the forfeiture incurred prior to such late assessments. 11 Eng. & Am. Ency. Law, 336; Knickerbocker Life Ins. Co. v. Norton, 96 U. S. 234; Rice v. New England Mutual Aid Society (Mass.), N. E. 624; Stylow v. Wisconsin Odd Fellows, 69 Wis. 224.

MR. JUSTICE WATERMAN. This was an action of assumpsit to recover the amount of a beneficiary certificate, issued by appellant to one Orson F. Cressey.

The by-laws provided that, by the fact of non-payment of an assessment, a member should stand suspended. Cressey failed to pay assessments and thereby stood suspended. He went to California, and from that place applied for reinstatement. Whether he then stood properly and lawfully suspended, we do not think it necessary now to discuss. By his application for reinstatement, he conceded that such was his position, and as his assessments had not then been paid up, and he then offered to pay them, it is manifest he must have had notice that he was delinquent as to them.

The by-laws as to the reinstatement were as follows:

" Sec. 10.    Any beneficiary certificate suspended by reason of non-payment of assessments thereon, may be renewed, if the member be living, at any time within a period

of three months from the date of said suspension, upon the following conditions, and none other; that is to say :

1.   All assessments that have been made during the time of suspension shall be paid, including the pending assessments.

2.   After thirty days, a certificate of good health shall be furnished by the applicant for reinstatement at the time the assessments are paid, in the manner and upon the blank appended to this section.

3.   The financier shall report the same to the lodge at its next regular meeting; a vote of the lodge shall be taken, and if a majority of the votes cast be in favor of reinstatement, the member shall be reinstated.   When all these conditions have been complied with, the beneficiary certificate shall be held as renewed and in full force, and not before, and the record of the reinstatement shall be made upon the minutes of the lodge at its next meeting."

Cressey wrote about June 20, 1888, to a fellow-member of his lodge, one Elmslie, expressing his desire to be reinstated, and stated in his letter that he was feeling first-rate since he went to San Diego, California, and never felt better in his life.

Elmslie thereupon signed Cressey's name to the following certificate of good health :

CERTIFICATE.

To the Grand Lodge of Illinois, A. O. U. W. :

JUNE 27, 1888.

I, O. F. Cressey, to whom beneficiary certificate No.——— was issued in Victor Lodge, No. 311, A. O. U. W., of the State of Illinois, having been suspended from all the rights, benefits and privileges of the order, and having forfeited all my rights as a member of the order by reason of the non-payment of assessment No. 154, which suspension and forfeiture occurred within a period of three months prior to the date of this certificate, and desiring to be reinstated in said order, as provided by the laws thereof, do hereby cer tify that I am at this date in sound bodily health, and that

I agree that the reinstatement of myself as a member of the order, based upon this certificate, shall be valid and binding only upon the condition that the statement herein contained relating to my bodily health, is true in every respect, upon the day and date recorded on this certificate.

O. F. CRESSEY.

Thereupon Cressey was reinstated, paying up his back assessments; thereafter his lodge paid his assessments for him, to the Grand Lodge.

Cressey died at San Diego, August 30, 1888.

Upon the trial it appeared that in July, 1888, he was examined at San Diego, by a physician, who testified that he found his lungs in bad condition with quick consumption; that he was then in the last stage of consumption.

As soon as the Grand Lodge received notice of the death of Cressey, it instructed the lodge of which he had been a member to set aside the reinstatement and to refund the money that had been paid for him, which was done.

Upon the trial, the court gave to the jury the following instructions :

"If the jury believe from the evidence that Orson F. Cressey, deceased, was sick at the time the application for his restoration to Victor Lodge, No. 311, of the Ancient Order of United Workmen, was signed, still, if the jury further believe from the evidence that said lodge soon thereafter had notice of the deceased's sickness, and sent him money, known as sick benefits, then the jury are instructed that defendant waived any and all right to question the validity of such restoration on the ground that deceased was sick at the time said application was made for such restoration.

If the jury believe from the evidence that Orson F. Cressey, deceased, was in his lifetime a member of Victor Lodge, No. 311, of the Ancient Order of United Workmen, and was, in the month of April, A. D. 1888, suspended therefrom, and that afterward, in the month of June, A. D. 1888, was restored to membership in said lodge, on the application made by one Elmslie, and from the time of such

restoration until his death was recognized as a member of said lodge, in good standing, and if the jury further believe from the evidence that after such restoration the said lodge paid to, or on behalf of said Cressey, sick benefits, and afterward and after the death of said Cressey, instructed the Point Loma Lodge in San Diego to bury said Cressey, and send bill therefor to said Victor Lodge, then the court instructs the jury that the defendant waived any irregularity or defect, if the jury believe from the evidence there was any irregularity or defect in the proceedings to restore said Cressey to membership of said Victor Lodge, and that the defendant is estopped from questioning the validity of such restoration, and plaintiff is entitled to recover in this action."

These instructions took from the jury the question of whether the certificate of good health, upon which Cressey obtained his reinstatement, was true.

There was no evidence that the lodge knew that he was then sick, and it appears that it acted upon such certificate; if this was false and fraudulent, as the evidence tended to show, the lodge properly set aside the order of reinstatement. There was no evidence that the Grand Lodge ever, until it received the notice of death, had any reason for believing that the certificate upon which Cressey had been reinstated was false; and whatever knowledge the subordinate lodge may have had of his subsequent illness, its action in paying his assessments for him, or allowing to him sick benefits, can not conclude the Grand Lodge, or make valid a reinstatement obtained by false representations.

The contract of insurance is essentially one of good faith. A reinstatement obtained upon false and fraudulent representations will not be binding upon the insurer. Supreme Council of the Royal Arcanum v. Lund, 25 Ill. App. 492; Connecticut Life Ins. Co. v. Rogers, 119 Ill. 474.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*