### Catherine G. Scheiber, Appellee, v. The Protected Home Circle, Appellant.

### Gen. No. 14,191.

1. FRATERNAL BENEFIT SOCIETIES—*what does not excuse non-payment of dues.* The insanity of a member does not excuse non-payment of dues so as to keep alive a certificate issued by virtue of his membership.

2. FRATERNAL BENEFIT SOCIETIES—*when suspension without notice for non-payment of dues valid.* A suspension without notice for non-payment of dues is valid if authorized by the constitution and by-laws of the society; and provisions providing therefor, forming a part of the contract between the society and the member, are bind-

ing upon all parties and no officers of the society have power to waive the same.

3. FRATERNAL BENEFIT SOCIETIES—*when re-instatement of suspended member not effective.* A suspension lawfully made for non-payment of dues is not lifted by the mere payment of the delinquent dues where the constitution and by-laws of the order, forming a part of the contract, provide for a formal application for re-instatement, the payment of a re-instatement fee, and the action of the society upon such application, it appearing that the society proceeded strictly in accordance with its constitution and by-laws, made no promises and was guilty of no deceptive practices.

4. FRATERNAL BENEFIT SOCIETIES—*what reasonable time for mailing monthly paper to members.* If a fraternal benefit society publishes a monthly paper containing information to members, in the absence of a designated time when such paper should be sent to its members the law requires that the same shall be mailed within a reasonable time. *Held,* that the fourth day of the month of the paper's publication fulfilled such requirement of the law.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed February 15, 1909. Rehearing denied February 25, 1909.

**Statement by the Court.** George S. Scheiber died October 30, 1906. On August 1, 1902, he became a member of the defendant Society and received from it a benefit certificate payable to plaintiff, his wife, at his death, for $1,000. Premiums were payable monthly on the first day of each month following the date of the certificate, and were to be made within thirty days after becoming due. Upon failure to pay any premium within thirty days of becoming due, it is provided in the certificate that "this benefit certificate shall be null and void and cannot be thereafter revived, except upon the filling out of and acceptance by said Supreme Secretary of a reinstatement blank furnished by the Supreme Circle." The payment of the $1,000 benefit is predicated upon the member being in good standing at the time of his death. The certificate was issued "subject to Art. XI, Sec. 10, printed on the back hereof, and all other provisions of said constitution and laws." Sec. 2, Art. XI of the defendant's constitution provided

that "for any neglect or failure to make such payments within the month for which they become due and payable, they shall stand suspended from the Order without notice and without any action on the part of the Supreme or local Circle." Section 9 provides "that a certificate may be revived within three months after suspension by becoming reinstated in the circle from which he was suspended by payment in full of dues and monthly payments unpaid, and filling out and signing, according to its terms, the blank furnished by the Supreme Circle and the payment of 25 cents, be fully reinstated as a beneficiary member upon the books of the Supreme Circle, provided that said statement will warrant his reinstatement."

The cause was tried before the court sitting without a jury, upon a stipulation of facts and witnesses examined orally by both parties.

It is conceded by the foregoing stipulation that defendant is a "fraternal beneficial society," existing in virtue of the laws of Pennsylvania, and has subordinate lodges known as "Circles" in Chicago; that George S. Scheiber was admitted to the Society and became a member of Protected Home Circle No. 507 August 1, 1902, and received the beneficial certificate set out in the declaration, and died on the date above firstly mentioned. In the month of June, 1906, and until the death of Scheiber a certain constitution and by-laws above referred to in part, were in force and are set out *in extenso* in the stipulation. Among them is a provision for suspension for non-payment of dues as aforesaidly stated, as also the method of reviving a lapsed certificate; also this provision, viz.: "The P. H. C. Gazette is hereby constituted the official paper of the order, and the notice of monthly payments and dues contained therein shall be considered the legal notice of monthly payments and dues, and the accountant shall not be required to send any other notice"; and "that all blanks used by a local, grand, or the Supreme Circle, shall be furnished by the Supreme Circle, and all rules

and regulations printed thereon shall be of binding authority, whether specifically mentioned herein or not.'' The stipulation also concedes as a fact that in the month of June, 1906, George S. Scheiber's office address was 1338 Sheffield avenue, Chicago, and that to that address, between the first and fourth of June, 1906, there was mailed to Scheiber, postage prepaid, from Sharon, Pennsylvania, a copy of the P. H. C. Gazette, in which a notice of monthly payment of dues was printed, with the names of the members from whom payment was due, and that among them appeared the name of George S. Scheiber. The notice contained the following paragraph: ''The receipt of this paper is not an acknowledgment by the Supreme Circle that the member is in good standing. If your last monthly payment or dues is not paid, your benefit certificate is null and void. W. S. Palmer, Supreme Secretary.'' Further, that neither Scheiber nor any one for him paid the monthly payment due for the month of June, 1906, under the laws of the order, until after July 1, 1906, or thereafter the monthly payments for August, September and October, 1906, and that the facts concerning payments for June and July, 1906, on behalf of Scheiber are not covered by the stipulation of facts. Plaintiff testified that in response to a postal card she received from Lou Rothschild, the accountant of the local circle, on which it was stated that Scheiber was suspended for non-payment of dues, she, on July 9, 1906, called on and paid to Rothschild the monthly payments for June and July assessments and twenty-five cents for reinstatement. On June 27, 1906, Scheiber was adjudged insane, but this fact was not communicated to Rothschild, the accountant, or to any other officer of the defendant, until after his death. Rothschild did not have in his possession July 9, 1906, any reinstatement blank, and he so informed plaintiff, at the same time telling her he would obtain some from the home office at Sharon and send one for the signature of Scheiber. This he did on July 14, 1906. The letter to Scheiber in which the rein-

statement blank was enclosed contained the following instruction: ''Kindly fill it out and have it signed by two witnesses.'' Plaintiff introduced the letter, the reinstatement form and the receipt for June and July payments and the reinstatement fee in evidence. In the reinstatement form this appears: ''Having been suspended from the Protective Home Circle, I hereby request to be reinstated therein, and as conditions thereto, I herewith tender the amount required under the rules of the Order and submit the following as full and complete answers to the test questions, with agreement duly subscribed to.'' This reinstatement form was neither executed nor returned by Scheiber, or any one for him, to defendant or to the local circle. The receipt for June and July payments and reinstatement fee contained this clause: ''This receipt is given with the distinct understanding that it does not reinstate the individual and that the amount will be returned if not reinstated at the Supreme office. The applicant is not in good standing, nor in any way beneficial, or the beneficiary entitled to benefits until he is reinstated before the Supreme Secretary.'' While plaintiff claims the payments and reinstatement fee were received by Rothschild, the local accountant, with the understanding that Scheiber was thereby reinstated, this is denied by Rothschild. Plaintiff made no further attempt to have her husband reinstated between July 9th and the date of his death, neither were any further steps taken until plaintiff, after her husband's death, made a tender of the August, September and October payments. Rothschild denies that he sent notice of Scheiber's suspension on a postal card, as testified by plaintiff, who also testified that she had lost the postal card, but did notify Scheiber of his suspension by letter of date July 6, 1906, which plaintiff brought to him on July 9, 1906, when she visited him and made the payments above recited, and that he kept the letter, and defendant offered it and it was received in evidence. That letter reads: ''Bro. G. S. Scheiber, M. D. You are hereby

notified of your suspension from the Protected Home Circle for non-payment of monthly payment for month of June, 1906, per Sec. 5, Art. 13, of Constitution. We are sorry indeed to lose your name, and hope you may soon be reinstated. Yours in S. E. F. & P. Lou H. Rothschild, Accountant."

Rothschild, as accountant, on July 9, 1906, sent his monthly report to the Supreme Secretary, in which Scheiber was mentioned as suspended for non-payment of monthly dues, stating that the last payment made was for May, 1906. The money paid by plaintiff was sent to the Supreme Secretary at Sharon, and by him retained, awaiting the arrival of reinstatement blank. As it did not arrive, the Supreme Secretary subsequently returned the money to Rothschild, the accountant of the local circle, who had it in his possession at the time of Scheiber's death. When plaintiff called upon Rothschild in October after her husband's death, he told her that he held the money subject to her order.

The finding of the trial court was for the amount of the benefit certificate in plaintiff's favor, and a judgment entered thereon against defendant, from which it prosecutes this appeal, seeking a reversal.

J. A. McLaughry and Edmund S. Cummings, for appellant.

O'Donnell, Dillon & Toolen, for appellee.

Mr. Justice Holdom delivered the opinion of the court.

Two contentions are presented by this appeal. Defendant's contention is that George S. Scheiber was not a member of its society at the time of his death, nor since June, 1906; while plaintiff contends, and the court below held, that the notice of suspension was not sufficient to operate as a forfeiture of all claims under the benefit certificate issued to Scheiber by defendant.

The court held as a proposition of law that the in-

sanity of Scheiber "did not relieve him from a compliance with the rules and regulations of the defendant society, relating to the reinstatement of suspended members." That such is the law is not disputed. Sec. 295 Niblack on Benefit Societies, 2nd ed.; Noel v. Modern Woodmen, 61 Ill. App. 597; A. O. U. W. v. Jesse, 50 *ibid.* 101. Neither will insanity excuse the non-payment of dues and assessments so as to operate to keep an insurance certificate in force while the insured is insane. Insanity does not relieve the insured from any obligation imposed by the terms of his insurance certificate, with the sole exception of personal attendance in complying with requisite conditions, that may be done by another for him.

The testimony in the record affirmatively establishes that Scheiber was supended from all benefit under his beneficial certificate for non-payment of the June, 1906, monthly payment, and that such suspension was brought about in the manner provided by the constitution and by-laws of the order, which constitution and by-laws formed a part of the terms and conditions under which the certificate was issued to Scheiber. By the express terms of the certificate, as well as the constitution and by-laws of the order, which were also made a part of the conditions of the certificate, a suspension for non-payment of monthly payments or any other infraction of the conditions upon which the certificate was issued, could be brought about without notice. Notice of any kind or character was by the terms of the contract dispensed with. The constitution and by-laws of the order were binding alike upon all the parties to the benefit certificate. Defendant and the member and all those claiming under him cannot escape the binding force of their contract, for in faith of its conditions it was made and accepted. No officer of defendant had the power or authority to waive the performance of any of its binding terms. It is clear that no action on the part of defendant or its officers can be construed to have caused any misunderstanding

on the part of plaintiff or Scheiber (if he was able to understand at all, and if by reason of his lunacy he was unable so to do, it is his and plaintiff's misfortune, from the results of which the law will not excuse him) as to Scheiber's being suspended for the non-payment of the June 1906 payment. By the testimony of plaintiff she concedes she had notice of her husband's suspension from the accountant of the local circle in a written communication of July 6, 1906, in response to which she endeavored to procure a reinstatement. The letter, the reinstatement form and the receipt for the money which she paid the local accountant in an effort to procure a reinstatement and offered by her in evidence, all conclusively show that the suspension was complete, and that there could be no reinstatement except on compliance by Scheiber with the constitution and by-laws of the order relating thereto. The presumption that any rule was relaxed or held in abeyance is rebutted by plaintiff's own proof. From the inception to the denouement defendant proceeded in all its actions in strict compliance with the constitution and by-laws and the terms of the contract, which were binding upon all the parties to it. It would seem that all effort to reinstate Scheiber was abandoned after July 9, 1906, for nothing further was done by Scheiber or by any one for him until after his death. No attempt was made to pay either the August, September or October monthly payments, from which admitted fact it seems illogical to contend that plaintiff believed her husband's certificate had been reinstated, for from her own evidence she must be presumed to have known that suspension would again occur for failure to make these monthly payments within the time agreed. Nor is it pretended that plaintiff was told anything or given any information or made any promise by defendant or any of its officers which would have raised any assumption in her mind that the succeeding payments would be dispensed with. Nor has plaintiff given any excuse for not notifying defendant that her husband had been

adjudged to be insane; for had she communicated this fact to defendant, the matter of reinstatement might have been arranged, if defendant had the power to arrange that matter without the personal attention of plaintiff's insane husband. As she produced upon the trial the form of reinstatement, letter and receipt sent by Rothschild, the accountant, to Scheiber, it must be assumed as proven that they reached Scheiber's address in due course of mail. It has been held that the receipt of an application for reinstatement by a delinquent member of a fraternal benefit society establishes knowledge of such member's suspension, and that such suspension was lawfully brought about. Grand Lodge v. Cressey, 47 Ill. App. 616; Hansen v. Grand Lodge, 140 Ill. 301. Such suspended member can only be reinstated in accordance with the laws and constitution of the society relating to reinstatement. National Council v. Dillon, 212 Ill. 325. The payment of the June and July payments and reinstatement fee, and their receipt by the local accountant, in no way had the effect of reinstating Scheiber or of relieving him from doing those things made necessary by the rules of the order as prerequisite to reinstatement. Neither did the receipt of the money operate as a waiver by the defendant of the necessity of Scheiber complying with the conditions established for reinstating a suspended member. Modern Woodmen of America v. Hicks, 109 Ill. App. 32; Northwestern Life Ins. Co. v. Amerman, 119 Ill. 329; McLaughlin v. Supreme Council, 184 Mass. 298.

While no notice of suspension or non-payment of any moneys due or assessed was required to be given members, yet by the custom and practice of defendant a notice of dues and payments was printed each month in the official organ of the society, the "Protected Home Circle Gazette." The June 1906 number of this paper contained a notice to all members that their monthly payments and dues for June, 1906, were due and must be paid to the accountant of the Circle before the last

day of the month. In the list of names in this notice Scheiber's appeared. A copy of this Gazette, it was provided, should be sent to all members, although no specific date in the month on which the paper should be sent was provided for. As will be seen from the recitation of fact preceding this opinion, a copy of the June paper was sent to Scheiber, directed to him at his business address, about the sending of which there is no contradiction. Lacking any designated time when such paper should be sent to the members, the law required that the same should be mailed within a reasonable time. The fourth day of the month of the paper's publication fulfils such requirement of the law. It was therefore sent within a reasonable time. Hamilton v. Scully, 118 Ill. 192. If the contention that Scheiber was entitled to notice of the payment due for June was tenable (which we do not think it is), then the mailing of the defendant's paper containing the notice of payments due for June, 1906, was sufficient and is binding as notice to Scheiber of the amount due, for a failure to pay which he was lawfully suspended.

When Scheiber died he was not a member of defendant society; he had been lawfully suspended from membership for failure to make the June, 1906, payment; his membership certificate then became forfeited, and plaintiff has no right or claim thereunder.

The judgment of the Municipal Court is erroneous, and it is reversed, and as plaintiff has no cause of action against defendant in virtue of the membership certificate in suit, the cause will not be remanded.

*Reversed.*