ANNIE B. LAWRENCE

v.

THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

1. EVIDENCE—PROOF OF DEATH.—In an action against a life insurance company for a death loss, the proofs of death required by the policy were offered and received generally as evidence. Under such circumstances they should be considered in all their parts, and effect should be given to all they prove or tend to prove.

3. PRACTICE—MOTION TO STRIKE OUT EVIDENCE.—A motion to strike out the plaintiff's evidence is in the nature of a demurrer to the evidence, and

like a demurrer admits not only all the facts proved, but also every conclusion which the jury might fairly and reasonably have drawn therefrom.

3. LIFE INSURANCE—SUICIDE—ACCIDENTAL DEATH BY INSURED'S OWN HAND.—The testimony as to the death of the insured tended to show that by inadvertence, or perhaps through negligence, he took an overdose of laudanum, which caused his death. *Held*, that in the case of a sane person, where there is an absence both of intention and culpable neglect, the death of the insured must be regarded as accidental and not within the proviso of the policy against self-destruction; that the question of the negligence of the insured was for the jury.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed March 2, 1880.

Mr. F. H. KALES and Mr. W. B. KEEP, for appellant; as to the rule for construing the policy, cited May on Insurance, 181; Bliss on Life Insurance, 655; Commercial Ins. Co. v. Robinson, 64 Ill. 265; Yeaton v. Fry, 5 Cranch. 341; Notman v. Anchor Ins. Co. 4 Com. Bench. 481; Hoffman v. Ætna Ins. Co. 32 N. Y. 413; Cropper v. Western Ins. Co. 32 Pa. St. 351; Palmer v. Warren Ins. Co. 1 Story, 361; Mayer v. Isaacs, 6 Mees. & W. 612; Borradaile v. Hunter, 5 Man. & Gr. 640.

Meaning of terms suicide, self-destruction, etc.: May on Insurance, 342; Bliss on Life Insurance, 373; Breasted v. Farmers' Loan & Trust Co. 8 N. Y. 299; Borradaile v. Hunter, 5 Man. & Gr. 639; Bigelow v. Berkshire Life Ins. Co. 3 Otto, 284; Terry v. Mutual Life Ins. Co. 15 Wall. 580; DeGogorza v. Knickerbocker Life, 65 N. Y. 232; Conn. Mut. Life v. Groom, 86 Pa. St. 92; Am. Life Ins. Co. v. Isetts, 74 Pa. St. 176; Phadenhemer v. Germania Ins. Co. 7 Heisk. 567.

Accidental death brought about by a party while sane is not self-destruction: Bliss on Life Insurance, § 228; Equitable Ins. Co. v. Patterson, 41 Ga. 338; Terry v. Mut. Life Ins. Co. 15 Wall, 580; Pierce v. Travelers Ins. Co. 34 Wis. 389; Schneider v. Provident, Ins. Co. 24 Wis. 28; DeGogorza v. Knickerbocker Ins. Co. 65 N.Y. 232; Newton v. Mut. Ins. Co. Reporter, 505; Van Zandt v. Ins. Co. 55 N. Y. 176; Provident Life Ins. Co. v. Martin, 32 Mo. 310; North Am. Ins. Co. v. Burroughs, 69 Pa. St. 43; Tooley v. Railway Pass. Ins. Co. 3 Biss. 399;

v. Fitton v. Accidental Death Ins. Co. 17 C. B. 122; Theobald v. Railway Pass. Ins. Co. 10 Exch. 44.

MESSRS. F. H. & F. S. WINSTON, for appellee; in support of the motion to exclude the plaintiff's evidence, cited Bliss on Life Insurance, 444; Ins. Co. v. Newton, 22 Wall. 32; Poleman v. Johnson, 84 Ill. 269; Martin v. Chambers, 84 Ill. 579.

The clause respecting self-destruction is not against public policy, and will be sustained : Bigelow v. Berkshire Life Ins. Co. 3 Otto, 284.

Death from the voluntary taking of excessive doses of a poison known to be deadly, is not an accident : Bliss on Life Insurance, § 369; Sinclair v. Passengers Ass. Co. 107, E. C. L., 478; Southard v. Railway Pass. Ins. Co. 34 Conn. 574; May on Insurance, § 515.

BAILEY, P. J. This was an action of debt, brought by Annie B. Lawrence against the Mutual Life Insurance Company of New York, on two policies of insurance, one for $10,000 and the other for $2,000 on the life of her late husband, Jeremiah R. Lawrence, in which she was named as the beneficiary. Both of said policies contained, among other things, the following conditions:

" If the said person upon whose death the policy matures shall die in consequence of a duel, or of the violation of law, or by disease, violence or accident brought about by intoxication, or shall impair his health by narcotics or alcholic stimulants, * * * the company shall be released from all liability on account of this contract.

" It is hereby declared and agreed that the self-destruction of the person, whether voluntary or involuntary, and whether he be sane or insane at the time, is not a risk assumed by the company in this contract, but in every such case the company will, upon demand made and the surrender of this policy, accompanied with satisfactory proofs of such death, within sixty days after its occurrence, pay the net reserve held upon it by this company at the beginning of the year in which death occurs, calculated by the present legal standard of the State of New York,

first deducting therefrom any indebtedness which shall have accrued to the company on account of this contract."

The cause was tried in the court below before a jury, and on the trial, the plaintiff read in evidence the policies of insurance, and proved the payment of the premiums, the death of the insured, the service on the defendant of the proofs of death required by the policies, and the marriage between the plaintiff and the insured.

It appears that after the death of the insured, a coroner's inquest was held, and that a copy of the evidence and proceedings at the inquest, and of the verdict of the coroner's jury, were, in accordance with the rules of the company, made a part of the proofs of death. Said proofs including the proceedings before the coroner, were offered and read in evidence to the jury on behalf of the plaintiff. The offer of these papers was not limited to the specific purpose of showing that the conditions of the policy had been complied with, but they were offered generally as evidence in the case, and were so received without objection on the part of the defendant. Under such circumstances, they should, like any other evidence, be considered in all their parts, and effect should be given to all they prove or tend to prove. N. A. Fire Ins. Co. v. Zaenger, 63 Ill. 464.

It appeared from said documents, that about five months prior to his death the insured had a run of typhoid fever, from which he had not entirely recovered; that four or five days before he died, he was fishing on the Calumet River, and accidently fell into the water, and from that time suffered more or less from severe abdominal pain; that on the morning of the day of his death he was suffering very severely, and for the purpose of obtaining something to alleviate his suffering, he went to a drug store and applied for some remedy. A friend suggested that he try some brandy, but he declined, saying that he thought it would do him no good. The person to whom he applied for medicine is shown to have been both a druggist and chemist. While in the drug store he was attacked with a paroxysm of pain, and the druggist testifies that while it lasted he was in as much pain as any person he ever saw.

In answer to an inquiry by the insured as to whether he

supposed laudanum would afford relief, the druggist replied that he thought perhaps it would, and administered to him a dose, and advised him, in case he was not relieved, to take more. The assured thereupon procured of the druggist a small vial of laudanum, and returned home. On his way home, he conversed with a neighbor about sending for his family physician, but as the latter resided in a distant part of the city, he concluded not to do so for the time being. Not experiencing any relief from the laudanum taken at the drug store, he sometime afterwards took another dose, and still later a third, the last dose being larger than the preceding. Soon after this he was seized with vomiting, and supposing he had thrown up the laudanum already taken, he took another dose of the same size, with the last. This was also succeeded by vomiting, as were two or three similar doses subsequently taken, and at about five o'clock in the afternoon he fell into a sleep from which he could not be aroused, and died about two hours afterwards. The coroner's jury by their verdict found that the deceased came to his death from the cumulative effect of repeated doses of laudanum, taken without advice, and for the relief of abdominal pain, supposing that he had vomited the larger part of each dose, and that his death was accidental.

The foregoing being all the evidence adduced on behalf of the plaintiff, the counsel for defendant, when the plaintiff had rested her case, entered a motion to strike out all the plaintiff's evidence, on the ground that the same was insufficient to sustain the plaintiff's cause of action, which motion was sustained by the court, and to which ruling the plaintiff duly excepted. The jury thereupon found a verdict for the defendant, and judgment thereon was rendered against the plaintiff for costs. The decision of the court sustaining the motion to strike out the plaintiff's evidence is assigned for error.

A motion to strike out the plaintiff's evidence is in the nature of a demurrer to the evidence, and like such demurrer, admits not only all the facts proved, but also every conclusion which the jury might fairly and reasonably have drawn therefrom. Phillips v. Dickenson, 85 Ill. 10; Fent *et al* v. T. P. & W. R. W. Co., 59 Id. 349; Poleman v. Johnson, 84 Id. 269.

The evidence in this case would have fully justified the jury in finding that the insured at the time of his death was sane, and also that he had no intention of taking his own life. If they had come to the further conclusion, that he took the laudanum in the manner he did in entire good faith, after obtaining the advice of one whom he supposed to be competent to advise him in the matter, we cannot say, as the case now stands, that such finding would not have been fair and reasonable. If it be insisted that he was guilty of negligence, the answer is that negligence is purely a question of fact for the jury, and the jury having, on the defendant's motion, been prevented from passing upon it, the case must be held to be in the same situation, so far as that question is concerned, as though it had been determined by the jury adversely to the defendant.

The present appeal, then, must be decided precisely as though the defendant had expressly admitted that the deceased at the time of his death was sane; that his death was involuntary, and that it occurred without negligence on his part, and as the wholly unexpected, and therefore accidental, result of means which he was using in good faith for the purpose of alleviating his physical suffering. The question then is, whether the accidental death of a sane person is within the meaning of the foregoing condition of the policies in suit, simply because some act of the deceased, performed with no design or intention of producing death, but for an entirely innocent purpose, and without negligence, happens to be the proximate cause of his death.

We are clearly of the opinion that a purely accidental death can in no proper sense be termed an act of self-destruction. In all the cases where construction has been given by the courts to conditions in life policies relating to the death of the insured by his own hand, the terms "suicide," "self-destruction," and "death by his own hand," have been held to be practically synonymous. To say of a purely accidental death that it was a "suicide" or a "death by his own hand" would be simply an abuse of language. That which is purely accidental or fortuitous can no more be charged to the account of the person whose act happens by the occasion of the accident than to that

of any one else. It is only where death results from an express design on the part of the deceased, or from some act which, though performed with no intention of producing death, is of itself culpably negligent, that the deceased can be charged with the responsibility of self-destruction. If a person in the pursuit of a proper object, and in the exercise of due care, should accidently fall into a body of water and be drowned, or should unwittingly expose himself to the small-pox or the yellow fever, not knowing at the time of the existence of the contagion, and die of the disease, it would in no proper sense be a case of self-destruction. If in either case, however, he should be culpably negligent in exposing himself to danger, although not intending to destroy his life, he would be, in the common judgment of men, the efficient instrument of his own death.

There is little in the decisions to be found in the books which can materially aid us in giving construction to the present policy. The precise clause under consideration, so far as we are aware, has never been made the subject of judicial interpretation. It exempts the company from liability in case of "the self-destruction of the person, whether voluntary or involuntary, or whether he be sane or insane at the time." Numerous decisions are to be found in the reports giving construction to conditions in life policies exempting the insurers from liability in case the insured should "commit suicide" or should "die by his own hand." These clauses have uniformly been held to cover all cases of voluntary self-destruction by a sane person. A question, however, arose very soon after their adoption by life insurance companies, as to how far they exempted the insurers from liability in case of the insanity of the insured, at the time of taking his own life. Accordingly, most of the cases where the proper interpretation of these clauses has been made, the subject of judicial consideration, have arisen where the deceased has committed suicide in a condition of partial or total insanity. On the question thus presented, there has been from the first a very great conflict of authority. See Borradaile v. Hunter, 2 Bigelow's Life and Accident Ins. R. 280, and note at page 303, in which most of the cases on this subject are collected.

The question came before the Supreme Court of the United States in Life Insurance Co. v. Terry, 15 Wal. 580, where, after a full review of previous decisions, it was held that: "If the assured, being in possession of his ordinary reasoning faculties, from anger, pride, jealousy, or a desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit; or when he is impelled thereto by an insane impulse which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable."

The foregoing decision, as well as most of the other authorities on the same question, recognizes three classes of cases, viz: 1. Suicide by a sane person. 2. By a person who is still capable of voluntary action, and of understanding the physical effect of the means which he uses to destroy his own life, but incapable of comprehending and realizing the moral character of his act; and, 3. By a person who is impelled to the act by an insane impulse which he has no power to resist.

All the authorities agree that the first of these classes is within the exemption from liability in the case of the "suicide" of the insured, or of his death "by his own hands," and that the third class is not within such exemption. The conflict of opinion has related merely to the second class. It is agreed on all hands that where death is the result of an insane impulse which he cannot resist, the act is to be viewed precisely as though it were the result of accident, or of an overpowering external force.    Even since the insurance companies have modified the condition so as to exempt themselves from liability in case of the death of the insured "by his own hand, sane or insane," some of the courts are still inclined to hold that where death is the result of an irresistible insane impulse, it is not within the exemption.

Upon principles quite analogous to the foregoing, it may be

held that in case of a sane person, where there is an absence both of intention and culpable negligence, the death of the insured must be regarded as accidental, and not within a proviso against self-destruction. With this construction, full effect may be given to all of the words of the condition in the policies under consideration. Voluntary self-destruction obviously can mean nothing more than the taking of one's life purposely and intentionally. Involuntary self-destruction would then include all those cases where a person, without intending to accomplish his own death, carelessly and negligently does acts which may naturally and probably result, and do in fact result, in death. The condition would thus be held to include all cases where there exists on the part of the insured any direct and immediate legal or moral responsibility for his own death. To go beyond this, and relieve the insurers from liability in all cases where the acts of the insured, without design or negligence on his part, do in fact contribute to shorten or terminate his life, would in most cases render life policies of very little value to the insured.

It follows that the defense in this case rests solely upon a charge against the insured of culpable negligence. This fact seems to be recognized by the learned counsel for the defendant; and, accordingly, they have endeavored in their argument to demonstrate the negligence of the insured from the evidence in the case. If they desired to avail themselves of this defense, they should have allowed the question of negligence to be presented to the jury; but having withdrawn it from the only tribunal legally competent to decide it, they are not now in a position to insist that any negligence has been proved.

The decision of the court below granting the motion to strike out the evidence was erroneous, and for that reason the judgment must be reversed and the cause remanded.

                                   Judgment reversed.