## THE NEW HOME LIFE ASSOCIATION OF ILLINOIS

### v.

### EMMA HAGLER ET AL.

*Life Insurance—Benevolent Association—Conditions in Policy—Self-Destruction—Insanity—Evidence.*

1. The terms suicide and self-destruction are synonymous, and in law imply that the act was deliberately done by a person capable of forming a legal intention.

2. Where a person kills himself while insane, even though he intends that the result of the act shall be fatal, but through the impairment of the reasoning faculties is not able to understand the moral character, nature, consequences and effect of such act, or is impelled by an irresistible impulse which he can not withstand, such act is not self-destruction within the legal sense of the term.

3. To determine whether one came to his death by reason of self-destruction, it is proper and necessary to hear evidence as to his mental condition.

4. In an action upon a policy of life insurance, there being a sharp conflict of evidence, this court declines to interfere with the verdict for the plaintiff.

[Opinion filed October 19, 1888.]

APPEAL from the Circuit Court of Franklin County; the Hon. DAVID J. BAKER, Judge, presiding.

Messrs. W. S. FOREMAN and J. A. WATTS, for appellant.

Messrs. W. H. WILLIAMS and D. M. BROWNING, for appellees.

REEVES, J. This suit was brought upon a certificate of membership issued by the appellant to one Abram Hagler.

Appellant was organized under the laws of this State, for the purpose of providing mortuary benefits to the widows and children of deceased members, or to such other persons as the certificate of membership might provide. The certificate issued in this case specifically designates Emma Hagler, wife of Abram Hagler, and his children as the persons who in case of his death should receive the benefits to be paid by appellant.

The certificate was issued by appellant and accepted by said Hagler upon the express conditions and agreements set forth upon the back of same, which were by agreement made a part of the contract between the parties. Among these conditions and agreements is the following: "If the holder of this certificate shall die by reason of any act of self-destruction whatever this certificate shall become null and void and of no effect, except that the aggregate amount of money which shall have been paid the association on this certificate, and no more, shall, on delivery of this certificate properly receipted, be paid to the beneficiaries, as hereinbefore provided, within ninety days after receipt of proofs of death." Among other pleas filed by appellant was the following, which is called in the record the third amended plea: "And for further plea in this behalf the defendant, by its attorneys, comes and defends the wrong and injury complained of, as to all the supposed promises in plaintiff's declaration mentioned, except the sum of $16.57, part of the sum of money in said declaration named, and says it did not promise in any manner and form as the plaintiffs have complained against it, and of this it puts itself upon the country. And as to the said sum of $16.57, part of the sum in plaintiff's declaration named, the defendant says, that the plaintiffs ought not to have their aforesaid action against it to recover any greater sum, because it says that it was and is provided in and by the certificate of membership sued upon, as follows: 'If the holder of this certificate shall die by reason of any act of self-destruction whatever, this certificate shall become null and void and of no effect, except that the aggregate amount of money which shall have been paid the association on this certificate, and no more, shall, on the delivery

of this certificate, properly receipted, be paid to the bene-
ficiaries, as hereinbefore provided, within ninety days after
receipt of proof of death.' And defendant avers that said
Abram Hagler, the holder of said certificate, came to his death
by reason of an act of self-destruction. And before the com-
mencement of this suit the defendant was ready and willing
and then and there tendered and offered to pay to the plaint-
iffs the said sum of $16.57, which was the aggregate amount
of money which said Abram Hagler had paid to the defend-
ant association upon the certificate sued upon; to receive which
from the defendant the plaintiffs then and there refused.

"And defendant says that ever since the death of the said
Abram Hagler, as to the said sum of $16.57, it has been and
still is ready to pay to the plaintiffs, and now brings the
money into court, ready to pay to plaintiffs if they will accept
the same, and this defendant is ready to verify."

To this plea the appellees filed this replication: "And for
replication to the defendant's amended third plea herein,
plaintiffs say *precludi non*, because they say that said Abram
Hagler did not come to his death by an act of self-destruction.
And of this they put themselves upon the country."

The case was tried upon issue joined upon this replication.
It is contended by appellant that the only question raised by
this issue was, did Abram Hagler take his own life? The
case was, in fact, tried upon the question, did Abram Hagler
commit suicide? In this the appellant insists there was error
under the pleadings in the case. The consideration of this
point involves the determination of the legal effect of the
averment in the plea that "Abram Hagler came to his death
by reason of an act of self-destruction." Self-destruction,
suicide, death by his own hands, are synonymous terms, and
are defined to be "the voluntary destruction of one's self."
The involuntary destruction of one's self, is not self-destruc-
tion. "Self-destruction by a fellow being, bereft of reason,
can with no more propriety be ascribed to his own hand than
to the deadly instrument that may have been used for the
purpose. And whether it was by drowning, poisoning or
hanging, or in any other manner, was no more his act, in the

sense of the law, than if he had been impelled by irresistible physical power." Life Ins. Co. v. Broughton, 109 U. S. Supreme Court Reports, page 121.

Suicide, or self-destruction, as these terms are to be understood in law, imply that the act was deliberately done by a person capable, in law, of forming a legal intention to do the act. If Hagler was insane at the time he took his life, and even though he intended that the result of his act should be his death, yet if his reasoning faculties were so far impaired that he was not able to understand the moral character, the general nature, consequence and effect of the act he was about to commit, or if he was impelled thereto by an irresistible impulse which he had not the power to resist, then his act was not an act of self-destruction in the legal sense of that term. Mutual Life Insurance Co. v. Terry, 15 Wall. 580.

To determine, then, whether Abram Hagler "came to his death by reason of an act of self-destruction," it was proper and necessary to hear evidence as to his mental condition, and the objection to the introduction of such evidence was not well taken.

In this view of the law applicable to the question under consideration, the Circuit Court properly modified the instructions asked by appellant upon special findings by the jury.

We have carefully examined the testimony found in the bill of exceptions upon the question of Hagler's mental condition. The testimony is conflicting and sharply so, and yet there is sufficient in the evidence to support the verdict. Following the well established rule in such cases of conflict in the testimony, we do not feel disposed to disturb the finding of the jury. The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*