59 515
59 526
59 515
160s 642

## Travelers Insurance Company v. Mary J. Dunlap.

1. ACCIDENT INSURANCE—*Taking Poison.*—A death caused by the accidental taking of a quantity of carbolic acid is a death resulting from external and violent means, and not within the exception of an accident policy providing that it shall not cover death resulting wholly or partly, directly or indirectly, from taking poison.

Assumpsit, on a policy of insurance. Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in this court at the March term, 1895. Affirmed. Opinion filed July 5, 1895.

### STATEMENT OF THE CASE.

This was an action in assumpsit by appellee against appellant upon a policy of accident insurance, dated December 2, 1889, and issued by the appellant to William T. Dunlap. The declaration contains two counts, in the first of which the policy is set forth in full. The second count purports to give only the promissory effect of the policy. Three special pleas were filed to the second count, to which a general demurrer was sustained, and appellant elected to stand by the pleas. The case came for trial before the court without a jury, upon the first count, with the plea of non-assumpsit alone to the second count.

The evidence tended to show that the deceased came to his death on June 14, 1890, as the result of taking, from his own hand, a considerable quantity of carbolic acid in place of a medicine which he desired to take for sickness from which he was suffering at the time. He died within a few minutes after taking the fatal dose.

The policy declared on insured William T. Dunlap for the term of twelve months, from noon of December 2, 1889, in the sum of twenty-five dollars ($25) per week, "against loss of time not exceeding twenty-six consecutive weeks, resulting from bodily injuries effected during the term of this insurance, through external, violent and accidental means, which shall, independently of all other causes, immediately and wholly disable him from transacting any and every kind of business pertaining to his occupation; or, if death shall result from such injuries alone, within ninety days, said company shall pay five thousand dollars ($5,000) to M. J. Dunlap, if surviving, subject to the following conditions:

4. This insurance does not cover disappearances, nor suicide, sane or insane, nor injuries of which there is no visible mark upon the body; nor accident, nor death, nor loss

of limb or of sight, nor disability resulting wholly or partly, directly or indirectly, from any of the following causes, or while so engaged or affected : Disease or bodily infirmity, hernia, fits, vertigo, sleep-walking, medical or surgical treatment (amputations necessitated solely by injuries and made within ninety days of the occurrence of the accident excepted), intoxication or narcotics, taking poison, contact with poisonous substances, inhaling gas, sun-stroke or freezing, dueling or fighting, war or riot, violating law, violating rules of a corporation, internal injuries (inflicted by the injured or any other person), voluntary over-exertion, wrestling, lifting, racing, gymnastics, voluntary exposure to unnecessary danger, entering or trying to enter a moving conveyance using steam as a motive power, riding in or on any such conveyance not provided for the transportation of passengers, walking or being on a railway bridge or road-bed (railway employes excepted)."

C. C. BONNEY and LYMAN M. PAINE, attorneys for appellant.

PECK, MILLER & STARR, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The Supreme Court of this State in the case of Healey v. Mutual Accident Insurance Association, 133 Ill. 556, declared it to be the law that in construing a policy of accident insurance upon a suit brought by the beneficiary therein named against the company by which the policy was issued, death caused by the accidental taking of an over-dose of chloral is a case of death resulting from external and violent means. Such being, it is conceded, thus the established law of this State, it is insisted that in such a suit against such a company, the words " This insurance does not cover death resulting from taking poison " are to be held as including the accidental, unintentional taking of poison. To the Supreme Court of this State is committed the power to declare what the law is. *Dicere non dare.*

Whatever opinion this court may have entertained it must conform its judgments to the rule announced by the judicial tribunal of last resort. A reference to the case above referred to clearly shows that the court had in mind and passed upon the contention now made by appellant.

The certificate of insurance considered in that case contained the following: "Provided, always, that benefits under this certificate shall not extend to any death or disability which may have been caused wholly or in part by the taking of poison."

The brief of counsel for appellants there presented contained the following:

"Third. The taking of poison within the meaning of the policy does not refer to or include an accidental death from taking or swallowing a deadly drug or poison."

The court, as a reading of the facts shows, had its attention called to the clause in the policy respecting death from the taking of poison; indeed, in this regard, the language of the certificate in that case is substantially like that of the policy in the one at bar. It is impossible to say that in the Healey case the language there under consideration did not refer to or cover the case of an accidental taking of poison (chloral), and that in the present case the words made use of do exempt death caused by the accidental taking of poison (carbolic acid).

The decision in Paul v. Travelers Ins. Co., 112 N. Y. 472, and that of Healey v. Mutual Accident Association are based upon the rule that policies of this kind are to be liberally construed in favor of the insured.

Acting upon this the Court of Appeals of the State of New York held that death resulting from the accidental inhaling of illuminating gas was caused by external and violent means. The room being filled with gas, it is easy to perceive the force of the reasoning that death was caused by "external" means, it being similar to death by drowning. It is more difficult to understand wherein the death was caused by "violent means," within any lexicographical or ordinary understanding or application of the term "violent."

If death, resulting from the accidental taking of an overdose of chloral is, as is established in this State, death resulting from "external and violent means," it is clear by the law in the same obedience to the aforementioned rule of construction, death from the taking of poison includes only intentional taking. The rule long since established in cases of suicide is analogous.

The taking of his own life by an insane man has often been held not to be within an exemption from liability in case of suicide; because in an insane person the intent is legally wanting. New Home Life Ass'n of Illinois v. Hagler et al., 29 Ill. App. 437.

There was certainly evidence warranting the finding of the court that the death was accidental.

The judgment of the Circuit Court is affirmed.