# Grand Lodge of Illinois, Independent Order of Mutual Aid, v. Catharine Wieting.

1. LIFE INSURANCE—*When Suicide Does Not Avoid the Policy.*—The term suicide implies an act of self-destruction, deliberately done by a person capable of forming a legal intention, and when one kills himself while insane, even though he intends that the result of the act shall be fatal, but through the impairment of the reasoning faculties is not able to understand the moral character, nature, consequences and effect of such act, or is impelled by an irresistible impulse which he can not withstand, such act is not suicide within the legal sense of the term, and is not within the contemplation of the parties to a contract of life insurance, and in such a case the insurer is liable.

2. PRACTICE—*Examination of Jurors.*—A party can not complain that the trial court erred in refusing to permit jurors to answer certain questions propounded to them by him, when the record does not show that he exhausted his peremptory challenges.

3. SAME—*Objections Must be Specific.*—Objections to testimony should be specifically stated to the trial court and only such objections as are so stated can be considered on appeal.

4. EVIDENCE—*Verdict of the Coroner's Jury.*—In an action against a life insurance company, the verdict of the coroner's jury that the insured " killed himself while temporarily insane," is properly admitted as evidence on behalf of the plaintiff.

Assumpsit, on a beneficiary certificate. Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 9, 1896.

JOHN P. AHRENS, attorney for appellant.

JACK & TICHENOR, attorneys for appellee.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action of assumpsit commenced by appellee against appellant, upon a beneficiary certificate issued by appellant to William Wieting, in favor of his wife, the appellee, herein. There have been two trials of the cause, the first resulting in a disagreement of the jury, but upon

the second, appellee obtained a verdict for $2,072.22, and a motion for a new trial being overruled, judgment was entered on the verdict.

Appellant prosecutes this appeal and assigns many errors.

The beneficiary certificate contained the following clause : "Provided, however, that should the said William Wieting commit suicide, then, and in that case, only the amount paid by the said William Wieting into the beneficiary fund by virtue thereof, shall be paid to the beneficiaries above mentioned, which said amount shall be in full of all demands whatsoever arising out of or under this beneficiary certificate."

The insured paid into the beneficiary fund of the society $26.25, and on September 24, 1894, hung himself in his father's barn, and thus came to his death. On the part of appellant it is contended that the insured committed suicide, and thus avoided the certificate as to the payment of anything except the amount contributed to the beneficiary fund as above stated. On the other hand it is insisted by appellee, that the act of William Wieting in taking his own life was an insane act, and therefore not a suicide within the meaning of the certificate.

It will be observed that the provision above quoted from the beneficiary certificate, contains no limitations or qualifications as to the character or effect of the suicide, as do some policies of life insurance, such as that the policy shall be void if the insured " commits suicide, whether sane or insane," and hence the term is to be taken according to its legal definition and acceptation, to wit, " The act of malicious self-murder." 2 Bouv. Law Dict., title, Suicide.

The great weight of authority in this country undoubtedly is, that the term suicide implies an act of self-destruction deliberately done by a person capable of forming a legal intention; and that when one kills himself while insane, even though he intends that the result of the act shall be fatal, but through the impairment of the reasoning faculties is not able to understand the moral character, nature, consequences and effect of such act, or is impelled by an

irresistible impulse which he can not withstand, such act is not a suicide within the legal sense of the term, and is not within the contemplation of the parties to a contract of life insurance, and in such case the insurer would be liable. Mutual Life Ins. Co. of N. Y. v. Terry, 15 Wall. 580; Breasted et al., Admrs., etc., v: Farmers L. & T. Co., 4 Hill, 73; Schultz v. Insurance Co., 40 O. St. 217; Conn. Mut. Life Ins. Co. v. Akens, 150 U. S. 468.

It is true there is an irreconcilable conflict among the courts of this country upon this question, some following the English doctrine, which seems to be that when one commits an act of self-destruction, it is immaterial that he was impelled thereto by reason of insanity which impaired his sense of moral responsibility and rendered him, to a certain extent, irresponsible for his actions.    Bowadale v. Hunter, 5 Mann. & Gr. 639; 2 Bigelow L. & A. Ins. R. 280; Clift v. Schwabe, 3 Conn. B. 437; 2 Bigelow L. & A. Ins. R. 312.

This appears also to be the doctrine held by the courts of Massachusetts.    Dean v. Am. Mu. L. Ins. Co., 4 Allen, 96; Cooper, Admx., v. Mass. Mu. L. Ins. Co., 102 Mass. 227.

But the rule first above stated, and now known as the American doctrine, appears to be sustained by the great weight of authority in this country, and may be regarded as the settled rule in most of the States of the Union. Bacon on Benefit Societies, Sec. 334.

And such is the rule followed by the courts of this State so far as the question has come before them for consideration.    Lawrence v. Mu. L. Ins. Co. of N. Y., 5 Ill. App. 280; Suppiger v. Covenant Mu. Ben. Assn., 20 Ill. App. 595; New Home Life Assn. v. Hagler et al., 29 Ill. App. 437.

In the case at bar a large amount of testimony was taken upon the trial, touching upon the mental condition of the insured at the time he committed the fatal act of self-destruction, a careful examination of which leads us to the conclusion that the verdict of the jury was warranted by the evidence, and we have no disposition to disturb their finding, that the deceased was insane and mentally and morally irresponsible at the time of his death.

We do not deem it necessary to go into an extended discussion of the evidence, although it has been elaborately argued by counsel upon both sides of the case. Being of the opinion it was sufficient to support the verdict, we will content ourselves with so holding so far as that branch of the case is concerned.

The application of said William Wieting for membership in the order was dated July 11, 1893, and contained the following clause : " I hereby most solemnly promise that I have made or will make to the medical examiner of your lodge, full and complete statements of the nature and duration of all ailments that now impair or have at any time impaired my life or health. I also agree that should I commit suicide, then, and in that case, only the amount paid by me into the Mutual Aid Fund on my certificate shall be paid to the beneficiaries mentioned in my beneficiary certificate. * * * I further agree and contract that the answers I shall make to the questions propounded by the medical examiner, as shown by the medical examiner's blank hereto attached, shall be the truth, and I agree that they shall form the basis of my contract with the said Grand Lodge of Illinois Independent Order of Mutual Aid."

Attached to the application was the medical examiner's blank therein referred to, and in such blank the insured was asked and required to answer whether he had, or ever had, among other diseases, habitual headache or sunstroke, to each of which questions said William Wieting answered " No." It is insisted by appellant that this answer of the insured was false, and that the misrepresentation being material to the risk, avoided the certificate. We think the question as to whether or not this representation was false, was fairly submitted to the jury, and they having found against appellant upon that point, we are content with their finding, as the evidence bearing upon that question is, at best, unsatisfactory. It is a very different case to that of Supreme Council Royal Arcanum v. Lund, 25 Ill. App. 492, cited by counsel for appellant, where there could be no question, upon the evidence, that the representations were false,

and of such a nature as ought to avoid the policy of insurance. About the only evidence there is in this case as to the deceased ever having had a sunstroke or habitual headaches, came from appellee on her cross-examination, the substance of which is that her husband told her he had a sunstroke and severe headache long before they were married. But so far as her own knowledge goes, she swears the first headache she ever knew him to have was in the fall of 1893, long after the date of his application for membership in appellant's society. The burden of showing that the representations were false was upon appellant, and we think the jury were justified in finding that the defense based upon that claim was not proven.

It is insisted that the court erred in refusing to permit the jurors to answer certain questions propounded to them by appellant. The following is a sample of the questions, viz.:

"If a man takes his own life, is it your opinion that that of itself shows that the man is insane?"

The court sustained an objection to the question, made by appellee, and in passing upon the question said, "I think as far as I ought to allow you to go, is to ask whether the act of self-destruction would create any prejudice in the mind of the juror so as to disqualify him from a fair consideration of all the evidence in the case and a fair trial of the case under the instructions of the court."

We see no impropriety in this action of the court. Nor do we think it would have been error to allow the questions to be answered. But in any event, inasmuch as the record does not show that appellant exhausted its peremptory challenges, it is in no position to complain now that it did not have a fair trial on that account.

It is also urged that the court erred in allowing to be answered a certain question of a hypothetical character, put to the medical expert introduced on behalf of appellee, it being claimed it was not warranted by the evidence. The question was objected to by appellant as "informal, and not applicable to this case as shown by the evidence." No attempt was made to point out specifically wherein the facts assumed

were not proven by the evidence or legitimately inferable from the evidence. In order to avail of an objection to a hypothetical question on the ground that it is not warranted by the evidence, we think the attention of the trial judge should be called specifically to the point relied on, in order that he may determine, as he must in the first instance, whether there is sufficient evidence tending to prove the facts stated, to authorize the question. Rogers on Expert Testimony, p. 67.

The rule is a general one, that objections to testimony should be specifically stated to the trial court, and that only such objections as are so stated can be considered on appeal. Ib.; Louisville, etc., R. R. Co. v. Falvey, 104 Ind. 409.

In cases involving an inquiry as to the sanity or insanity of another, considerable latitude is almost necessarily allowed in the framing of hypothetical questions to medical experts. Whether or not the supposed facts set forth in the hypothesis are proven, is always in the end a question for the jury under the instructions of the court. We are of the opinion there was no error in permitting the question to be answered.

The court refused to allow the witness, Frantz Taylor, to testify as to the mental condition of the deceased on the ground that the witness had not shown sufficient knowledge upon the subject to enable him to do so. Even if this was error it was not sufficiently serious to require a reversal of the judgment for that cause. The witness showed such a slight knowledge of the deceased in his lifetime, that his testimony could have had but little weight with the jury if admitted.

It is also insisted the court erred in admitting in evidence the verdict of the coroner's jury, finding that Wieting killed himself while temporarily insane. In the case of United States Life Ins. Co. v. Vocke, 129 Ill. 557, it was held that the evidence was proper. Counsel for appellant attempt to draw a distinction between that case and this, on the ground that there the verdict was offered against the plaintiff, while here it was admitted in her favor. We can see no difference

in principle.  The point of the Supreme Court's decision in the case cited was, that by force of the statute the coroner's inquest became a public record, and was thereby made competent evidence in any subsequent judicial inquiry upon the same subject, as tending to prove the facts found to be true on the face of the record.  We can perceive no reason why, if the verdict would be admissible against the plaintiff, it should not be receivable in her favor.  We hold there was no error in admitting the verdict as evidence in the cause.

We find no serious error on the part of the court in giving, refusing or modifying instructions.  The jury seem to have been fully and fairly instructed as to the law of the case, according to the American doctrine as to what class of suicides will avoid a policy of life insurance, and we think appellant has no cause to complain that the court did not instruct as strongly in its favor as it was entitled to.

There being no substantial error in the record, the judgment will be affirmed.