LYDA HODGSON, Plaintiff, *v.* PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK, Defendant.

(Supreme Court, Kings Trial Term, May, 1917.)

Insurance (accident) — provisions of policy of — renewals — trial — Insurance Law, § 107.

Section 107 of the Insurance Law, which provides that on and after January 1, 1914, no policy of accident insurance " shall be issued or delivered " unless certain conditions are complied with and that no such policy shall be issued or delivered " unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply," refers to such a policy which expired by its terms in 1903 and every renewal of such policy since the enactment of section 107 of the Insurance Law is subject to the provisions thereof.

Where, in an action on said policy, the issue was whether the death of the insured was due to accidental means or whether he died from disease and the court is satisfied that the matter was not adequately put before the jury and that the question of death from suicide, which came into the case, did not properly belong therein, and the court is impressed with the belief that because of omissions or errors in its charge the interests of justice require that the questions of fact should be submitted to another jury under a proper charge, plaintiff's motion to set aside a verdict in favor of defendant and for a new trial will be granted.

ACTION upon a policy of accident insurance.

Frederick W. Sparks, for plaintiff.

Harry A. Talbot and William H. Hotchkiss, for defendant.

CROPSEY, J. The action is on a policy of accident insurance. The plaintiff is the beneficiary and seeks to recover for the death of Willard H. Hodgson, the

insured. The decision on the motions made upon the pleadings and the proof was reserved and the verdict of the jury taken. A verdict having been for the defendant, plaintiff moved to set it aside.

It is conceded that if all the exceptions and provisos in the policy are to be considered the plaintiff is not entitled to recover; for these provide that "This insurance shall not cover disappearance; nor suicide, sane or insane;   *   *   *   nor from any gas, vapor, narcotic, poison, infection or anything else consciously or unconsciously, voluntarily or involuntarily, accidentally or otherwise taken, administered, absorbed or inhaled;   *   *   *   nor from disease in any form, either as a cause or effect." The plaintiff claims the insured died as the result of morphine poisoning accidentally produced, while the defendant claims he died from disease, namely, pneumonia. Both of these causes are covered by the exceptions and hence if they are valid the plaintiff cannot succeed.

The plaintiff contends, however, that the exceptions must be disregarded because they are printed in type less prominent than the benefits are printed and thus is a violation of chapter 636 of the Laws of 1910 and of chapter 155 of the Laws of 1913, the latter statute repealing the former, and each adding section 107 to the Insurance Law. It is not disputed that the policy does not conform with the provisions of section 107, but the defendant contends it does not have to conform because it was issued before those laws were enacted and hence that they do not apply. This is the first question to be considered for it arose upon the motions to dismiss made at the close of the plaintiff's case and again at the close of the whole case, the defendant not introducing any proof.

Section 107 of the Insurance Law, as adopted by the Laws of 1913, provides that on and after January 1,

1914, no policy of accident insurance " shall be issued or delivered " unless certain conditions are complied with and that no such policy shall be issued or delivered " unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply." The policy in question was first issued in March, 1903. It then covered by its terms a period of only six months from its date. There was no provision in it for its continuance or renewal after the date of its expiration. It did contain a provision that it might be canceled at any time by the company. The concessions and the proof show that this policy was successively renewed, the last renewal having been for one year from March 12, 1915, and the deceased having died within that year. The renewals were in the form of receipts and in substance stated that the policy, referring to it by number, was continued in force for a specified period. These renewal papers concededly did not conform to the provisions of section 107, to which reference has been made.

The defendant contends that that section applies only to new business written for the first time after the date mentioned in the act and that it does not relate to the renewals of existing policies of accident insurance. The plaintiff contends that the act relates to all agreements for such insurance made after the date stated, whether such agreements be for the continuance of previously issued policies or for the issuance of new policies. The language of the section might well have been clearer but the purpose of it seems plain. It was to give protection to the insured. The act prescribed a standard form for such policies in addition to providing that the exceptions must appear as prominently as the benefits. If this section be limited to new obligations undertaken for the first time after its passage it would fail to protect the many

thousands of then policyholders whose policies might subsequently be renewed and its effect be thus greatly minimized.

While happier language might have been used to show that it was the intention that it should apply alike to new policies as well as to the renewal of old ones, there is no real difficulty in placing that construction upon the language that was used. The provision is that no such policy "shall be issued or delivered." The policy in question ran for a specified term. There was no provision in it for its renewal or continuance. The provision for increased benefits in the event of its being continued for a number of years gave no right of continuance. It was only to be effective in case there was such continuance. When the policy ended by its terms neither side was obliged to renew it and it could not be renewed or continued without the consent of both parties. That is, a new contract had to be made. Each renewal was for a specified term and was a separate and distinct contract from the original agreement and from each prior renewal. *Campbell Milk Co.* v. *United States Fidelity & Guaranty Co.*, 161 App. Div. 738. In effect, a new policy was issued upon each renewal being made. Instead, however, of actually issuing a new policy the renewal certificate or receipt by reference to the old policy made it the new one. The effect and the result were just the same as if an agreement for accident insurance had been made and instead of all the terms and conditions of the agreement being contained in the memorandum signed by the parties that memorandum referred to a document on file, say in a public office, as being the one which contained the conditions to be mutually binding. In that case the paper on file and which was incorporated into the agreement by reference would have to comply with the

provisions of section 107, otherwise the exceptions would not be available.

Of course the enactment of section 107 could not invalidate policies theretofore issued and which were then in force. No such situation here exists. The policy in question originally expired by its terms in September, 1903. Every renewal of it made since the enactment of section 107 was subject to the provisions of that section. Every renewal was the making of a new agreement or contract for a specified term the same as though no previous insurance had existed. The fact that no new policy was physically made is of no moment. It, in effect, was rewritten by being incorporated in the agreement by reference. It was issued again when the renewal was made just the same as though it had not been issued orginally. These policies are very different from the ordinary life insurance policies. The latter extend during the lifetime of the insured and, hence, section 107 could not apply to such policies as were in existence when it was adopted. *Perry* v. *Prudential Insurance Co.,* 144 App. Div. 780. But in the case of accident policies they run for a specified term only and at the end of that term they expire. A renewal of them is the making of a new agreement the same as though one had never been made.

The defendant contends that if section 107 is held to apply to renewals as well as to new business it would work a great hardship both to the insured and to the company. And it points to the provisions of section 55 of the Insurance Law to the effect that no policy can issue except upon the application of the insured, and claims that under the section upon the expiration of the policy a new " written " application would have to be made by the insured for a continuance of the liability. But there is no such require-

ment in the statute. Moreover section 55 would seem
to apply the same to renewals as to new insurance.
But even if labor were entailed that would not be a
reason for failing or refusing to construe the statute
according to its terms and with the view to executing
its purposes. Nor is the assertion that this is the first
time such a construction has been claimed for the sec-
tion in question a reason for deciding in defendant's
favor. A similar claim was made in *Camp-
bell Milk Co.* v. *United States Fidelity & Guaranty
Co.,* 161 App. Div. 738, and notwithstanding it was
held that there was a cumulative liability on the part
of the company upon the successive renewals of a
fidelity bond.

The exceptions are not enforcible and so the ques-
tions arising on the motion to set aside the verdict
must be considered.

The jury found a verdict for the defendant. The
issue which the court sought to submit to the jury was
whether the insured's death was due to accidental
means or whether he died from disease. The court is
convinced that the matter was not adequately or
properly put before the jury and that the question of
death from suicide, which came into the case, did not
properly belong there. And for the failure to present
this matter properly to the jury the court assumes
entire responsibility. In its brief on this motion
defendant says: " The defendant at no time has
sought to maintain that plaintiff's intestate committed
suicide. It did not set up suicide as a defense in its
answer and nowhere in the proceeding has it attempted
to establish this as a fact." That this question was
before the jury or that they at least thought it was
is manifest from the record. Without further attempt-
ing to point out the omissions or the errors in the
charge it is sufficient to say that the court is impressed

with the belief that the interests of justice require that the questions of fact should be submitted to another jury under a proper charge.

The plaintiff must prove that the deceased came to his death by accidental means. *Whitlatch* v. *Fidelity & Casualty Co.*, 149 N. Y. 45. But she is not obliged to prove that the deceased did not commit suicide, as the presumption is that he did not. *Mallory* v. *Travelers Insurance Co.*, 47 N. Y. 52; *Travelers Insurance Co.* v. *McConkey*, 127 U. S. 661–666, 667; *Freeman* v. *Travelers Insurance Co.*, 144 Mass. 572–578; *Travelers Insurance Co.* v. *Nicklas*, 88 Md. 470. Suicide is no defense (even where the deceased was sane) where a third party is the beneficiary under the policy, unless it is expressly excepted, though the rule is different where the policy is payable to the deceased or to his estate. *Fitch* v. *American Popular Life Ins. Co.*, 59 N. Y. 567–573; *Darrow* v. *Family Fund Society*, 116 id. 537–542. But suicide is a defense though not excepted (where the deceased was sane) to an action on a benefit or membership certificate made payable to a third party. *Shipman* v. *Protected Home Circle*, 174 N. Y. 398. And suicide (where the deceased was insane) is no defense unless expressly excepted and an exemption from liability in case of suicide does not cover, for that means only the suicide of a sane person. *New Home Life Association* v. *Hagler*, 29 Ill. App. 437.

Plaintiff's proof tended to show the deceased had taken too much morphine. That gave rise to the possibilities: 1. That he had taken it with suicidal intent; 2. That he had taken the excess quantity intentionally but not conscious that it would produce a harmful effect; and 3. That he did not intend to take as much as was taken. The suicidal possibility is eliminated by the concession in defendant's brief. As to the

11

possibility that he intended to take all that he did, but did not know it would be harmful, the question arises whether such taking would be an " accidental means." Upon this there is a conflict of authority. That such a taking would not be accidental and that no recovery could be had upon it is held in *Carnes* v. *Iowa State T. M. Association,* 106 Iowa, 281, and *Lehman* v. *Great Western Accident Assn.,* 155 Iowa, 737. But the contrary has been held in *Dezell* v. *Fidelity & Casualty Co.,* 176 Mo. 253, and *Beile* v. *Protective Association of America,* 155 Mo. App. 629. That such a taking is within the policy seems to be the better rule. Cooley, in his Briefs on the Law of Insurance (Vol. 4, p. 3156), says: " Strictly speaking, a means is accidental perhaps only when disassociated from any human agency, but this narrow interpretation is not recognized in the law of accident insurance." See also the definition of " accident " and " accidental " in 1 Corpus Juris, 425.

Death that resulted from internal injuries received by the deceased jumping a short distance was held to be covered by a policy similar to the one in question. *United States Mutual Accident Assn.* v. *Barry,* 131 U. S. 100–121. So was death resulting from blood poisoning caused by the deceased cutting his corn (*Nax* v. *Travelers Insurance Co.,* 130 Fed. Repr. 985) ; and death resulting from coming in contact with poison ivy was held within the policy (*Dent* v. *Railway Mail Association,* 183 Fed. Repr. 840) ; and injuries received in a scuffle were held to have been the accidental means of the party's death. *Lovelace* v. *Travelers' Protective Association,* 126 Mo. 104.

Poison taken accidentally is within the policy in question. *Mutual Accident Association of the Northwest* v. *Tuggle,* 39 Ill. App. 509; *Healey* v. *Mutual Accident Association,* 133 Ill. 556; *Travelers Insuranc'*

*Co.* v. *Dunlap,* 59 Ill. App. 515. So is gas inhaled unintentionally. *Paul* v. *Travelers Insurance Co.,* 112 N. Y. 472. This is true in the absence of a valid exception, but where the exception expressly covers such taking or inhalation then that would be a defense. *Porter* v. *Preferred Accident Insurance Co.,* 109 App. Div. 103; affd., 186 N. Y. 599.

The plaintiff's proof was sufficient to take the case to the jury on the question whether the deceased died by accidental means within the provisions of the policy. *Landon* v. *Preferred Accident Insurance Co.,* 43 App. Div. 487; affd., 167 N. Y. 577.

Holding as I do, that the exceptions in the policy are not valid because they are violative of section 107 of the Insurance Law, the reserved motions to dismiss the complaint are denied. And for the errors in the charge and in the interests of justice, plaintiff's motion to set aside the verdict of the jury and for a new trial is granted.

Motion granted.