[Civ. No. 8173.   Second Appellate District, Division Two.—February 20, 1934.]

AMELIA H. MAGBY, Respondent, v. NEW YORK LIFE INSURANCE COMPANY (a Corporation), Appellant.

Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Appellant.

Sheridan, Orr, Drapeau & Gardner for Respondent.

ARCHBALD, J., *pro tem.*—Action by plaintiff, as surviving wife of William L. Magby, on the double indemnity provision contained in three policies of insurance on the life of decedent, issued by defendant, the single indemnity provided for therein having been theretofore paid by the defendant company. The case was tried before a jury, which returned a verdict in favor of plaintiff. From the judgment entered upon such verdict defendant has appealed.

It was stipulated that the insured died on December 8, 1927, and that the cause of his death was the inhalation of carbon monoxide gas which resulted in asphyxiation. Each policy of insurance contained a clause providing for double indemnity "upon receipt of proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause . . . subject to all the terms and conditions contained in section 2 hereof". Section 2 of the policy provided: "The provision for double indemnity benefit on the first page hereof will not apply if the insured's death resulted from self destruction, whether sane or insane. . . ." No contention is made that the double indemnity provisions of such policies do not apply if the insured's death did not result from self-destruction. Without quoting the evidence, it is sufficient to say that in our opinion it would amply support either an affirmative or negative finding of death by self-destruction, under the rule binding appellate courts in case of conflicting evidence.

Appellant urges that the court erred (1) in failing to distinguish between "accidental death" and "death resulting from accidental cause or means" in certain instructions given, (2) in so instructing the jury as to lead it to apply

the rule of law to the facts of the case that ambiguities in a contract of insurance are to be resolved against the insurer and in favor of the insured, and (3) in refusing certain instructions requested by defendant.

█ (1) Appellant complains because the court did not in any of its instructions *define* "accidental cause". In our opinion a definition of the two words would not be clearer in its meaning than the idea conveyed by the words themselves. The court did in several instructions explain very clearly to the jury what an accidental cause or means was and what it was not, and, we think, brought home to it the meaning as applied to situations that might result from the evidence in a much more satisfactory manner than could possibly have been done by an attempted definition. Taking the instructions as a whole, we fail to see how the jury could possibly have been confused as to the necessity of plaintiff's proving that the insured's death was the result of an *"accidental cause"* before any recovery could be had, nor that the jury could possibly have understood that a recovery could be had under the policy if the facts showed merely *"accidental death"*. The distinction between accidental death and accidental cause of death under the policies here was clearly pointed out to the jury in an instruction given by the court at appellant's request, reading as follows: "You are instructed that to recover on an accident policy insuring against death resulting from injuries caused solely by external, violent and accidental means, it must be shown not only that death was an accidental result, but that the cause itself was external, violent and accidental, the word accident in such policy meaning an event which takes place without one's foresight or expectation."

Under the policies here the double indemnity clause became effective only upon death resulting from accidental cause and not merely upon an accidental death, and in our opinion the jury could not have been confused under the instructions given.

█ (2) Appellant complains that the following instruction led the jury to apply the rule of strict construction to the facts of the case: "It is a rule that insurance contracts are to be most strongly construed against the insurer and in favor of the insured, especially where a forfeiture is involved, so that indemnity will be granted rather than denied,

and these provisions of law are particularly applicable to an insurance policy containing the exception that a benefit will not apply if the insured's death resulted from self-destruction. Such an exception applies only to suicide, and accidental self-destruction is not within the operation of the exception. The reasonable interpretation of this clause in the policy is that it means that the double indemnity benefit will not apply if the insured's death resulted from suicide, whether sane or insane.''

We agree with appellant that the clauses involved here are not ambiguous, and that even if they had been the rule of construction was for the court and not the jury. The instruction in question does not expressly leave the interpretation of any supposed ambiguity to the jury under the rule laid down, and the court itself in the last paragraph tells the jury what the exception means—although in our opinion it is not made any clearer than the language of the exception. The use of the word ''accidental'' to qualify ''self destruction'', which of itself implies purpose, design or intent, would seem to be entirely out of place. If death is ''accidental'' there could be no purpose, design or intent back of the act causing it. The two words seem to be used together quite commonly, though. We agree, however, with the following from the case of *Lawrence* v. *Mutual Life Ins. Co. of New York*, 5 Ill. App. 280, 285: ''We are clearly of the opinion that a purely accidental death can in no sense be termed an act of self destruction.'' Regardless of that, we see nothing in the instruction that the jury could possibly take as an invitation to apply the rule intended only for construction of writings to the facts of the case.

In the case of *Poncino* v. *Sierra Nevada L. & C. Co.*, 104 Cal. App. 671 [286 Pac. 729, the interpretation of the contract was expressly left to the jury under a similar instruction, but it was held that the jury being elsewhere instructed as to the meaning of the material terms of the policy and apparently having followed such instructions, any error was cured. In the case of *Postler* v. *Travelers Ins. Co.*, 173 Cal. 1 [158 Pac. 1022, 1024], the court, after reversing the case on other grounds, considered an instruction similar to the one here, not expressly leaving the matter of interpretation to the jury, observing: ''It stated the rule correctly, but the matter of the construction of the contract was a matter of law

for the court, and the jury could not have been aided by this instruction in deciding the questions of fact submitted to them." While, as we say, the instruction so far as it relates to the interpretation of the contracts should not have been given, we fail to see how the jury could possibly have understood that they were intended to apply it to the facts before them. We must assume that the jurors were intelligent, and if so, they must have concluded that it had nothing to do with them, inasmuch as the court itself applied the rule in the same instruction and left nothing for them.

■ (3) The court refused to instruct the jury that "the presumption that facts shown to exist continued applies to insanity". The mental experts who examined the decedent at the time he was taken to the psychopathic ward testified that the peculiar type of insanity afflicting him might last for weeks, months or years; that the individual might have a long interval in which he is free from all symptoms and mentally normal, and that "the same thing may occur over again and have the same thing repeated a number of times during life"; that the individual does not deteriorate as the disease goes on, as in case of some insanities, and so end in a state of dementia, and that when the individual is through with an attack he is essentially himself—as he was before. In view of the fact that it was not general insanity which appellant's evidence showed existed, we see no error in the refusal of the court to give the requested instruction relative to the continuance of insanity once shown to exist, particularly in view of the fact that the record does not disclose any adjudication of insanity.

In our opinion the other instructions refused were substantially covered by those given.

Judgment affirmed.

Stephens, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 20, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20, 1934.